2024 IL App (2d) 230027
No. 2-23-0027
Opinion filed July 10, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No.  19-CF-94 |
| SHAQUILLE P. PRINCE, | ) ) | Honorable Marcy L. Buick, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE KENNEDY delivered the judgment of the court, with opinion.
Justices Schostok and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant, Shaquille P. Prince, appeals his conviction for aggravated domestic battery and domestic battery following a jury trial at which he proceeded *pro se*. He was sentenced to three years' imprisonment for aggravated domestic battery, while the remaining counts for domestic battery were vacated under one-act, one-crime principles. On appeal, defendant argues that the trial court abused its discretion when it refused to consider his peremptory challenges of two prospective jurors during *voir dire*. Defendant also contends that the court abused its discretion when it allowed the State to introduce evidence of other domestic violence offenses because the State had failed to give him pretrial notice of its intent to introduce the offenses.

¶ 2    We hold that the trial court abused its discretion because its jury empanelment procedure resulted in the seating of a juror who had expressed clear bias during *voir dire* questioning. Therefore, the court denied defendant his constitutional right to a fair trial before an impartial jury. We reverse and remand for a new trial.

¶ 3                     I. BACKGROUND

¶ 4    On March 18, 2019, defendant was charged by indictment with one count of aggravated domestic battery (count I) and two counts of domestic battery (counts II and III). All three counts alleged that on January 25, 2019, defendant punched the victim, Selena Anderson, in the face with his fist. Count I additionally alleged that defendant's action caused great bodily harm in that Anderson sustained a gash to her head that required stitches and left a scar. We limit our recitation of the facts to those pertinent to jury selection, as that issue is dispositive in this appeal.

¶ 5    Defendant elected to proceed *pro se* at trial following multiple admonishments from the trial court during various pretrial hearings. At a March 22, 2019, hearing, defendant told the court, "I have experience with this girl and she's done this multiple times and all the charges were dismissed." The court informed defendant that "there will be no special consideration given to you from the Court due to you not having a lawyer." Defendant stated that he understood. The court also informed him that "[a] person unfamiliar with legal proceedings may not make effective use of [ ] rights such as questioning jurors and may make technical decisions that produce unintended consequences." Defendant again told the court that he understood and that he was competent to represent himself.

¶ 6    At a hearing on September 5, 2019, defendant requested the appointment of the De Kalb County Public Defender to represent him at trial. The trial court appointed counsel to represent defendant and scheduled trial for December 2, 2019.

¶ 7    Defendant next appeared at an October 31, 2019 hearing on his motion to terminate representation by the De Kalb County Public Defender and proceed *pro se*. At the hearing, defense counsel informed the trial court of a new indictment for escape, which involved defendant's failure to comply with electronic home monitoring. Defendant was arraigned on that charge and then the court pivoted to the instant case. Defendant again requested to proceed *pro se* and the court discharged the public defender's office. The court reminded defendant that he would be given no special considerations by proceeding *pro se*.

¶ 8    On December 2, 2019, this case proceeded to trial. First, the trial court entertained pretrial motions and considered the State's notice to introduce evidence of defendant's other offenses of domestic violence under section 115-7.4 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-7.4(c) (West 2018)). The court found that the previous instances of domestic violence occurred in close temporal proximity to this case and that the other offenses were factually similar and involved the same victim. The court allowed the State to introduce the evidence of other domestic violence offenses, finding that the probative value outweighed any undue prejudice to defendant.

¶ 9    Before proceeding to *voir dire*, the trial court informed defendant that he had seven peremptory strikes for prospective jurors. The court did not mention challenges for cause or explain the difference between a peremptory challenge and a challenge for cause. The court told defendant that it would be asking the venirepersons a series of questions in compliance with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012). The court instructed defendant where to stand while questioning witnesses. The court did not mention any additional *voir dire* procedures.

¶ 10   Before beginning *voir dire*, the trial court stated to the venire that "our purpose here in the selection process is simply to find 12 people to serve on the jury and two alternate jurors who will

come to this case with fair and open minds, who will listen closely to all of the evidence, who will follow the jury instructions, and render a fair and impartial verdict." The court first asked the entire jury pool general questions, including whether any of them, a family member, or a close friend had ever been charged with or been the victim of a criminal offense other than a minor traffic offense. When certain venirepersons raised their hands and expressed that either they personally or close family members had experienced domestic violence, the court then asked whether there was anything that would prevent them from being fair and impartial jurors in this case. Each venireperson agreed that he or she could remain fair and impartial, with the exception of one, who stated that he had been the victim of a carjacking and could not remain impartial. The court excused that venireperson.

¶ 11    After general questioning, the trial court called the first panel of four venirepersons, asked them questions pursuant to Rule 431(b), and tendered them for questioning by the parties. The State questioned the first three venirepersons on the panel and exercised a peremptory challenge to dismiss one of them. The court replaced the excused venireperson, asked the new panelist preliminary questions under Rule 431(b), and then allowed the State to ask questions. The State exercised another peremptory challenge to excuse the new panelist after he had stated that he did not believe it was possible "to love someone and fear someone at the same time." Venireperson 25 was added to the panel and, under questioning by the State, she revealed that one of her sisters had been a domestic violence victim but did not press charges.

¶ 12    After the State questioned venireperson 25, the prosecutor told the trial court, "[w]e would accept and tender this panel." The court stated to defendant, "you may question the potential jurors in panel No. 1 if you would like to do so." Defendant responded, "I would excuse and thank, I'm not sure what her name is, but the young lady in the crutches." The court told defendant that

"[s]he's not been questioned yet." The court then stated, "[s]o the jurors in the first panel that Ms. Friend for the State just questioned, those are the four individuals in the front row, you may question them if you would like to do so." Defendant responded, "I feel that Ms. Friend has thoroughly questioned them, and I would like to excuse and thank juror No. 25."

¶ 13    After venireperson 25 was excused, the trial court replaced her with venireperson 33. After asking venireperson 33 the Rule 431(b) questions, the court told defendant, "you may question this juror." Defendant stated, "I don't have any questions for the jurors in the front row." The State then asked venireperson 33 a series of questions, including whether she knew anyone who had been the victim of domestic violence. Venireperson 33 responded, "[u]nfortunately, myself." She stated that her ex-husband had committed domestic violence against her more than 30 years ago. The State asked venireperson 33 how long the domestic violence continued against her. Venireperson 33 replied, "[t]oo long." In addition, 50 years ago, she witnessed her sister victimized by domestic violence perpetrated by a significant other. When the State asked whether anything about her personal experiences would cause her not to be fair and impartial in this case, she responded, "I don't think so." After the State finished questioning venireperson 33, the prosecutor stated, "[w]e would accept [her]." Immediately afterwards and without any further input from the parties, the court stated, "the potential jurors in the first panel have now been accepted as jurors, so the four of you will be jurors in this case." The court then recessed for a lunch break.

¶ 14    After the break, the trial court called in a second panel of four prospective jurors and asked questions pursuant to Rule 431(b). The State then questioned the panel and exercised a peremptory challenge against one of them. The court called venireperson 2 to join the panel, who stated that he had witnessed domestic violence while at a bar. The State asked venireperson 2 whether that incident would prejudice him at trial and he responded, "[n]o." After questioning venireperson 2,

the State told the court that it would accept and tender the panel back to the court. At that point, the court told defendant, "if you would like to, you may question the potential jurors in the second panel." Defendant responded, "[b]efore the break, it was sort of abrupt, I didn't get a chance to thank and excuse the lady in the red jacket in the first row." The following colloquy occurred:

"THE COURT: Okay. At this time you have the opportunity to question the potential jurors in the second panel. The State has accepted those four potential jurors. You have the opportunity to question them to decide if you wish to accept those four jurors.

DEFENDANT: Thank you, I understand, but I didn't get a chance to—

THE COURT: I'm saying at this time, these four people in the second panel have been selected by the State to be jurors, so it's your turn to ask your own questions of the four people in the second panel to decide whether you wish to accept them as well."

¶ 15    Defendant responded by excusing venireperson 2 from the panel without asking him any questions. The trial court replaced him with venireperson 41 and asked her Rule 431(b) questions. The court then stated to defendant, "you may question this juror." Defendant responded, "I don't have any questions for her." The court repeated, "[y]ou do not have any questions for her. All right." The court stated that it was going to accept the panel, but the State interrupted and sought to question venireperson 41. The State asked venireperson 41 a series of questions that revealed her father had committed domestic violence against her mother "maybe about 12 years ago." In addition, venireperson 41 described witnessing a domestic violence event at a friend's house, stating, "I could see him hitting the wife, [but] the cops weren't called [and] it never escalated to a court case or anything of that nature." The State asked venireperson 41 whether her experience

with domestic violence would cause her to be biased during trial. She responded, "[i]t might. I can't really say it won't." The State pursued no further questioning to rehabilitate the impartiality of venireperson 41, nor did the court. After questioning venireperson 41, the State accepted the panel and tendered the panel back to the court. The following colloquy immediately ensued:

"THE COURT: All right, thank you. All right.

DEFENDANT: Your Honor, I'd like to thank and excuse juror No. 41.

THE COURT: No, you've accepted the panel.

DEFENDANT: I did not accept the panel.

THE COURT: So the individuals in the second panel have now been selected as jurors, and you can go to the jury room with the bailiff at this time."

¶ 16 Immediately after selecting venirepersons from the second panel to sit on the jury, including venireperson 41, the trial court called in a third panel consisting of four prospective jurors for questioning under Rule 431(b) and tendered the panel to the State for questioning. Venireperson 15 stated that her ex-mother-in-law had experienced domestic abuse from her ex-father-in-law, in which the police became involved. In addition, she had witnessed a domestic violence incident involving a long-time friend. The State did not ask the prospective juror whether her experience with domestic violence would prejudice her during defendant's trial or whether she could be fair to both parties. The State questioned the next venireperson on the panel and exercised a peremptory challenge to excuse him. After questioning three more prospective jurors, including one called to replace the excused venireperson, the State accepted the prospective jurors and tendered the panel back to the court.

¶ 17 After the State tendered the third panel, the trial court informed the parties that venireperson 15 had not slept because she worked nights. The court asked venireperson 15 to

approach the bench, told her that she had been selected to sit on the jury, and asked her if she wanted to be excused "and you can get some sleep." Venireperson 15 agreed and the court excused her without objection from either party. Once she was replaced by another venireperson, the State questioned and tendered the replacement, and the court told defendant that he could ask the newest venireperson questions. Defendant responded that he did not have any questions. Without asking if defendant accepted the panel and without any further input from the parties, the court stated that the third panel had been finalized and that a full jury had been selected. The parties then selected two prospective alternate jurors.

¶ 18     During the entirety of *voir dire*, defendant used a total of five peremptory challenges and unsuccessfully attempted to use a sixth peremptory challenge to excuse venireperson 41. The trial court excused venireperson 15 for cause. The record reflects that the parties did not challenge any of the prospective jurors for cause. The only time defendant specifically stated that he had accepted a panel of prospective jurors was when he told the court that he accepted the two alternate jurors.

¶ 19     Following opening statements, the State presented the testimony of the victim, Selena Anderson, two of the nurses who had treated her at the hospital following the alleged incidents of domestic violence, and two of the police officers who had responded to and investigated the victim's domestic violence claims.

¶ 20     After the State rested, defendant moved for a directed finding, which the trial court denied. Defendant rested without presenting evidence. Following closing argument, the jury found defendant guilty of one count of aggravated domestic battery and two counts of domestic battery.

¶ 21     On December 3, 2019, defendant filed a *pro se* motion for new trial. He argued, among other things, that "[t]he Court erred in refusing to allow Defendant to strike juror #41 before taking an abrupt break and juror #47." He attached to his motion a verified affidavit executed by

Anderson, in which she attested that she was "angry when I found [defendant] cheating on me," and that "[t]he reports/statements made to police were untrue." She also attested that "[t]here was never any domestic violence." Defendant also attached a March 13, 2019, e-mail that Anderson sent to the assistant state's attorney who prosecuted the case, in which she stated that she was "recanting my previous statements about the domestic incidences involving [defendant]." Anderson stated in the e-mail that she "was acting out of malice and request [*sic*] the charges be dropped."

¶ 22    Defendant subsequently retained an attorney to represent him. New defense counsel filed a second motion for new trial on July 17, 2020, arguing, among other things, that the trial court erred in denying defendant's use of a peremptory challenge to excuse venireperson 41. The motion acknowledged that defendant had declined to ask venireperson 41 any questions. The motion noted that the State had questioned venireperson 41 and then accepted the panel. Defendant next attempted to use a peremptory challenge to excuse venireperson 41, which was denied. Defendant argued that the court's denial violated Illinois Supreme Court Rule 434 (eff. Feb. 6, 2013), because the court failed to provide him with the opportunity to accept or reject the panel. Defendant contended that he was not afforded a fair opportunity to excuse a juror after detecting bias or hostility. He argued that he was not provided notice in advance regarding whether the court had altered the "usual procedure" for exercising peremptory challenges under Rule 434, which does not prohibit "back-striking." He alleged that Anderson committed perjury at trial by testifying falsely against him. In addition, defendant contended that the court erred when it allowed the State's evidence of uncharged offenses under section 115-7.4 of the Code because the State never identified why the evidence was relevant to the proceeding.

¶ 23    On October 2, 2020, the trial court conducted a hearing on defendant's motions for new trial. Defendant argued that, as it related to peremptory challenges, "the matters taken before the venire was brought in does not indicate that a method of jury selection that included backstriking would not be allowed is not present." We take this to mean defendant challenged the court's failure to provide notice of how jury selection procedure was going to be conducted. Defendant contended that Illinois authority established the custom of back-striking during jury selection. He argued that the failure to admonish the parties about back-striking "meant that when he did attempt to back-strike and was denied, that was a change in the process that is not permissible and the denial for him to then use that peremptory challenge violates [Rule] 434."

¶ 24    The State responded that defendant forfeited the *voir dire* issue and, forfeiture aside, he acquiesced to the panel being sworn in. He was asked whether he wanted to question venireperson 41 and declined to ask any questions. The State argued that it was not until after the State tendered the second panel that defendant sought to excuse venireperson 41 and, therefore, he cannot claim error.

¶ 25    Before ruling on defendant's motion, the trial court stated that defendant timely filed his *pro se* motion for new trial, however, new defense counsel filed a second motion for new trial more than six months later without requesting leave to file that motion. The court also noted that the second motion was not labeled as an amended motion. Nevertheless, the court addressed the arguments in both motions. The court stated that defendant never objected to any evidence or testimony that the State presented and, therefore, he forfeited any complaint in his posttrial motions. Regarding *voir dire*, the court stated as follows:

      "The transcript reveals that when the panel was being questioned, [defendant] declined to question juror number 41. The panel at that point was

tendered by the Court back to the State. The State accepted the panel after questioning juror number 41. The panel was then tendered as a completed accepted panel to the Court.

The defendant's apparently belated desire to thank and excuse number 41 was not a potential back-striking scenario, because the panel containing number 41 was not present before him.

So he was not able at that point to take any action regarding juror number 41, he was simply too late, the trial had already moved forward, and so I do not believe anything with regards to juror number 41 is a basis to grant him a new trial."

¶ 26    The trial court denied defendant's posttrial motions. This appeal followed.

¶ 27                                    II. ANALYSIS

¶ 28    On appeal, defendant argues that the trial court abused its discretion and deprived him of a fair trial before an impartial jury because it refused to consider his peremptory challenges to two prospective jurors. In addition, defendant contends that the court abused its discretion when it allowed the State to introduce evidence under section 115-7.4 of the Code when the State failed to provide him with pretrial notice of its intent to introduce evidence concerning the January 6, 2019, incident. The first issue concerning jury selection is dispositive.

¶ 29    Defendant contends that the trial court improperly conducted *voir dire* proceedings in a manner that required him to exercise peremptory challenges of venirepersons before he heard their answers to the State's questions. In particular, he sought to use his peremptory challenges to excuse venirepersons 41 and 33, but was denied his opportunity to do so after they both had revealed potential bias after questioning by the State. According to defendant, the fairness issue was further compounded when the court failed to ask him whether he had accepted either of the first two

panels. Instead, the court gave defendant the opportunity to ask questions of the venire and, when he asked none, it interpreted his declination as his acceptance of the panels.

¶ 30    When defendant declined to ask venireperson 41 questions and the State requested to *voir dire* venireperson 41, she then revealed that her father had committed domestic violence against her mother. The State asked her whether that experience would cause her to be biased during trial. Venireperson 41 responded, "[i]t might. I can't really say it won't."

¶ 31    Venireperson 33 stated that she had personally experienced domestic violence from her ex-husband. When the State asked her whether anything about that experience would cause her not to be fair and impartial in this case, she responded, "I don't think so."

¶ 32    Defendant makes two arguments. First, he contends the trial court abused its discretion due to the manner in which it conducted *voir dire*, which created the possibility that a prospective juror would reveal bias against a party *after* that party had been deemed to have accepted him or her. Further, defendant in this case never expressly accepted either of the first two panels. Therefore, the court denied his right to a fair trial before an impartial jury when it denied his requests to use peremptory challenges to dismiss venirepersons 41 and 33 after they revealed their potential bias against him. Second, defendant contends that the court never communicated its *voir dire* procedure to the parties prior to beginning jury selection and never expressly asked either party whether they had accepted any of the panels before seating them as jurors.

¶ 33    The State responds that defendant forfeited his right to contest the selection of venirepersons 41 and 33 to the jury because he neither timely objected nor attempted to exercise a challenge for cause or peremptorily before their acceptance to the panel. The State argues that defendant specifically mentioned only venireperson 41 in his posttrial motion and raises his claim involving venireperson 33 for the first time on appeal. The State contends that the issue regarding

venireperson 33's selection was not properly preserved on appeal and is forfeited. According to the State, after questioning began for the second panel, defendant requested to strike "the young lady in the red jacket" from the prior panel, but the record contains no identification of the red jacketed venire member as venireperson 33. In addition, the State argues that, forfeiture aside, the trial court did not abuse its discretion when it denied defendant's requests for peremptory challenges of the two venirepersons because he was given the opportunity to question them but failed to do so and only attempted untimely peremptory challenges after they had already been accepted to the panel.

¶ 34                    A. Standard of Review and Pertinent Jury Selection Procedure

¶ 35    The United States and Illinois Constitutions provide that criminal defendants are guaranteed an impartial jury " 'capable and willing to decide the case solely on the evidence before it.' " *People v. Olinger*, 176 Ill. 2d 326, 353 (1997) (quoting *Smith v. Phillips*, 455 U.S. 209, 217 (1982)); U.S. Const., amends. IV, VI; Ill. Const. 1970, art. I, § 8. "Trial judges should not give grudging acceptance to the defendant's constitutional right to a fair and impartial jury." *People v. Reid*, 272 Ill. App. 3d 301, 309 (1995). A defendant is "entitled to be tried by 12, not 9 or even 10, impartial and unprejudiced jurors." *Parker v. Gladden*, 385 U.S. 363, 366 (1966). "The failure to accord an accused a fair hearing violates even the minimal standards of due process." *People v. Cole*, 54 Ill. 2d 401, 411 (1973) (citing *Turner v. Louisiana*, 379 U.S. 466, 471-72 (1965)). Indeed, "[t]he right to a trial by an impartial tribunal is so basic that a violation of the right requires reversal." *Id*.

¶ 36    "Impartiality is not a technical concept; rather, it is a 'state of mind.' " *Reid*, 272 Ill. App. 3d at 307 (quoting *Cole*, 54 Ill. 2d at 413). "[A] venireman is *incompetent* to sit as a juror if he cannot be impartial." (Emphasis in original.) *People v. Johnson*, 215 Ill. App. 3d 713, 725 (1991).

"More than a mere suspicion of bias must be demonstrated." *Reid*, 272 Ill. App. 3d at 307. "The burden of showing that the juror possesses a disqualifying state of mind is on the party challenging the juror." *Id*. "That party must show the actual existence of such an opinion in the mind of the juror 'as will raise the presumption of partiality.' " *Id*. (quoting *Cole*, 54 Ill. 2d at 413). Our supreme court has stated that "a person is not competent to sit as a juror if his state of mind is such that with him as a member of the jury a party will not receive a fair and impartial trial." *Cole*, 54 Ill. 2d at 413. An impartial jury is "made up of persons prepared to exercise their personal judgment, favoring neither prosecution nor accused, standing indifferent to both, and guided only by law and the evidence in the performance of their duties." *People v. Hobbs*, 35 Ill. 2d 263, 270 (1966).

¶ 37    In furtherance of the right to an impartial jury, "inquiry is permitted during *voir dire* to ascertain whether the juror has any bias, opinion, or prejudice that would affect or control the fair determination by him of the issues to be tried." (Internal quotation marks omitted.) *People v. Encalado*, 2018 IL 122059, ¶ 24. The trial court is primarily responsible for initiating and conducting *voir dire*. *People v. Rinehart*, 2012 IL 111719, ¶ 16 (citing *People v. Strain*, 194 Ill. 2d 467, 476 (2000)). "The purpose of *voir dire* is to ascertain sufficient information about prospective jurors' beliefs and opinions so as to allow removal of those members of the venire whose minds are so closed by bias and prejudice that they cannot apply the law as instructed in accordance with their oath." *People v. Cloutier*, 156 Ill. 2d 483, 495-96 (1993) (citing *People v. Seuffer*, 144 Ill. 2d 482, 500, 505 (1991), and *Wainright v. Witt*, 469 U.S. 412, 424 (1985)). The manner, scope, and extent of *voir dire* examination rests with the trial court's discretion. *Rinehart*, 2012 IL 111719, ¶ 16; *People v. Sanders*, 238 Ill. 2d 391, 403 (2010).

¶ 38    Illinois Supreme Court Rule 431(a) (eff. July 1, 2012) provides guidance for the exercise of this discretion, stating that the trial court:

"may permit the parties to submit additional questions to it for further inquiry if it thinks they are appropriate and shall permit the parties to supplement the examination by such direct inquiry as the court deems proper for a reasonable period of time depending upon the length of examination by the court, the complexity of the case, and the nature of the charges."

The method of evaluating the court's exercise of discretion is " 'whether the means used to test impartiality have created a reasonable assurance that prejudice would be discovered if present.' " *People v. Walls*, 2022 IL App (1st) 200167, ¶ 36 (quoting *People v. Peeples*, 155 Ill. 2d 422, 459 (1993)). The trial court abuses its discretion when its conduct "thwarts the purpose of *voir dire* examination—namely, the selection of a jury free from bias or prejudice." *Rinehart*, 2012 IL 111719, ¶ 16; see *People v. Clark*, 278 Ill. App. 3d 996, 1003 (1996) ("The purpose of *voir dire* is to enable the trial court to select an impartial jury and to ensure that the attorneys have an informed and intelligent basis on which to exercise peremptory challenges."). Stated differently, a trial court "does not abuse its discretion during *voir dire* if the questions create 'a reasonable assurance that any prejudice or bias would be discovered.' " *Rinehart*, 2012 IL 111719, ¶ 16 (quoting *People v. Dow*, 240 Ill. App. 3d 392, 397 (1992)).

¶ 39    In reviewing the trial court's determination, the entire *voir dire* examination of the potential juror should be considered, as opposed to selective responses. *Peeples*, 155 Ill. 2d at 462-63. Because the court is in the best position to observe the potential juror's demeanor and ascertain the meaning of his or her remarks, the court's determination will not be disturbed on review unless it is against the manifest weight of the evidence. *Id*. at 463, 466.

¶ 40    Rule 434(a) states that, when impaneling a jury in criminal cases, "the parties shall pass upon and accept the jury in panels of four, commencing with the State, unless the court, in its

discretion, directs otherwise." Ill. S. Ct. R. 434(a) (eff. Feb. 6, 2013). During this process, the parties may challenge prospective jurors for cause or peremptorily. *Walls*, 2022 IL App (1st) 200167, ¶ 37. "A challenge for cause is supported by a specific reason, like bias or prejudice, which disqualifies that potential juror; such challenges are limitless" and left to the circuit court's discretion. *Id*. In contrast, a peremptory challenge "need not be supported by any reason, and *** Rule 434 *** allows defendants in a criminal case who are facing imprisonment only seven such challenges (and the State the same)." *Id*. (citing *People v. Bowens*, 407 Ill. App. 3d 1094, 1098 (2011)).

¶ 41    During *voir dire*, the questioning of a prospective juror may reveal that he or she has previously formed an opinion about the case, such as harboring ill feelings regarding the crime charged to the defendant, because of the juror's personal experience involving that crime. See, *e.g.*, *People v. Harris*, 196 Ill. App. 3d 663, 676-77 (1990) (holding that a juror should have been excused for cause when she stated during *voir dire* that the murder of her father could affect her ability to be fair and impartial). Once the trial court becomes aware of the potential bias, the court or the parties may ask the venireperson whether the formation of the opinion would prevent him or her from judging the facts impartially. *Id*. If the prospective juror responds that it might prevent him or her from reaching a fair and impartial verdict, the court should exercise its discretion to dismiss the juror for cause. *Id*. at 677. Although the trial court does not have a *duty* to remove a juror *sua sponte* for cause in the absence of a defendant's challenge for cause or exercise of a peremptory challenge, it certainly has the discretion to do so to ensure a fair and impartial jury. *People v. Metcalfe*, 202 Ill. 2d 544, 557 (2002).

¶ 42    In *People v. Moss*, 108 Ill. 2d 270, 275 (1985), our supreme court stated that the traditional method of jury selection "permits parties to 'back-strike': after tendering a panel, a party may

exercise a peremptory challenge against a juror originally passed upon and tendered, if opposing

counsel excuses a juror, accepts another, then retenders the panel."[1] The *Moss* court explained that

_____

[1]The following example illustrates the process of "back-striking" during jury selection:

"Voir dire is underway and it's time for [counsel] to start making decisions about

prospective jurors. As plaintiff's counsel, the court will ask if the first panel of four

jurors—1, 2, 3 and 4—are acceptable. You exercise peremptory challenges as to

juror numbers 2 and 3. The court then replaces jurors 2 and 3 with jurors 5 and 6.

These two new panel members are acceptable, so you accept and tender the panel

consisting of jurors 1, 4, 5 & 6 to the defendant.

   The defendant's counsel exercises peremptory challenges against jurors 4

and 5. The court then selects jurors 7 and 8 to replace stricken jurors 4 and 5.

Defendant accepts that panel and tenders back to you the panel consisting of jurors

1, 6, 7 and 8. This is where back-striking comes into play.

   The question becomes: May you use a peremptory against juror numbers 1

or 6, even though you previously accepted those jurors as part of your original

panel? If a court does not allow back-striking, you would only be allowed to

challenge the new jurors in the panel of four—in our example, jurors 7 and 8—but

not the previously accepted panel members.

   Let's take it a step further. You are permitted to back-strike and exercise a

peremptory challenge against juror 6. The court replaces the stricken juror with

juror 9. You accept the revised panel and tender that panel back to the defendant.

Defense counsel may exercise a back-strike against any of [the] panel members

"[u]ntil both sides have accepted the same panel, either party may peremptorily challenge a venireman previously tendered to the other side." *Id*. Notably, "Rule 434(a) does not abrogate the traditional selection procedure; rather, the rule permits the use of the traditional method unless the court directs that a different procedure be used." *Id*. The trial court has the discretion to alter the usual procedure for exercising peremptory challenges "*if both parties have adequate notice of the system to be used* and the method chosen does not unduly restrict the use of challenges." (Emphasis added.) *Id*.; see *Walls*, 2022 IL App (1st) 200167, ¶ 38.

¶ 43    "The right to peremptory challenges is one of the most important rights granted to an accused because it eliminates 'extremes of partiality on both sides' and assures the parties that the case will be decided on the basis of evidence placed before the jurors." *Walls*, 2022 IL App (1st) 200167, ¶ 38 (citing *People v. Daniels*, 172 Ill. 2d 154, 165 (1996)). The denial or impairment of a peremptory challenge "is reversible error without a showing of prejudice to the defendant." *Moss*, 108 Ill. 2d at 276; see *Walls*, 2022 IL App (1st) 200167, ¶ 38. Our supreme court has further observed that "the right to peremptory challenges is not denied or impaired 'if the procedure affords both parties fair opportunity to detect bias or hostility on the part of prospective jurors, *and* if the procedure allows both parties a fair chance to peremptorily excuse any venireman.' " (Emphasis added.) *Daniels*, 172 Ill. 2d at 165 (quoting *Moss*, 108 Ill. 2d at 276). "Whether this right has been impaired depends on the specific facts of each case." *Walls*, 2022 IL App (1st)

---

previously accepted. This can go on until both sides have accepted the panel—or until the parties have exhausted their peremptory challenges." Clare E. McWilliams, *I Strike, You Strike, We all Strike When We Back-Strike*, 25 Chi. B. Ass'n Rec. 42, 42 (2011).

200167, ¶ 38. When the requisite showing of denial or impairment is established, prejudice to a defendant's right to a fair trial may be presumed. *Daniels*, 172 Ill. 2d at 165.

¶ 44 In this case, the trial court informed defendant that he had seven peremptory challenges, but otherwise provided no additional instruction regarding jury selection procedure. A review of the record shows the court conducted jury selection mostly in the traditional manner contemplated by Rule 434(a). See Ill. S. Ct. R. 434(a) (eff. Feb. 6, 2013). Relevant here, the court did not inform the parties regarding its procedure to accept venirepersons to the panel and whether it "directed otherwise" the parties' order of acceptance under Rule 434(a). When defendant declined to ask questions, the record demonstrates that the court interpreted his declination as acceptance of the venireperson to the panel. Significantly, after the State clearly elicited potential bias from venirepersons 33 and 41, the court foreclosed defendant from the opportunity to exercise any challenge even though he never expressly accepted either venireperson to the panel. Moreover, the court had neither prohibited back-striking nor provided "notice of the system to be used" prior to initiating jury selection. *Moss*, 108 Ill. 2d at 275; *Walls*, 2022 IL App (1st) 200167, ¶ 38.

¶ 45 A defendant "retains the constitutional right to choose to represent himself in a criminal trial no matter how unwise that decision may be," as long as he was properly admonished in accordance with Illinois Supreme Court Rule 401 (eff. July 1, 1984), which the record shows occurred here. *People v. Palmer*, 382 Ill. App. 3d 1151, 1158 (2008). A *pro se* defendant "must comply with the rules of procedure required of those represented by counsel, and a court should not apply more lenient standards to a *pro se* defendant." *People v. Stevenson*, 2011 IL App (1st) 093413, ¶ 39. "This is so because when a defendant represents himself, he assumes the responsibility for conducting his own defense and is not entitled to favored treatment." *People v. Fowler*, 222 Ill. App. 3d 157, 163 (1991) (citing *People v. Amos*, 204 Ill. App. 3d 75, 80-81 (1990)).

¶ 46    Here, the trial court admonished defendant multiple times that he would receive no special treatment. The record demonstrates that defendant, who had established his familiarity with the legal process during previous proceedings involving similarly charged crimes, fully understood the nature of the proceedings and was clearly able to assist in his own defense. *Palmer*, 382 Ill. App. 3d at 1157; see *People v. Johnson*, 206 Ill. 2d 348, 361-62 (2002) (a defendant is considered to be fit if he understands the nature of the proceedings and can assist in his own defense). However, regardless of whether a party proceeds *pro se*, the court is "ultimately responsible for conducting *voir dire* in a manner that assures the selection of an impartial panel of jurors free from prejudice or bias" and provides the parties an intelligent basis on which to exercise any challenges. *Metcalfe*, 202 Ill. 2d at 552. With the above principles in mind, we now address the State's contention that defendant failed to preserve his right to challenge the selection of venirepersons 33 and 41.

¶ 47                              B. Preservation and Forfeiture

¶ 48    Defendant argues that his challenge to the jury selection process is preserved for review, particularly as to venireperson 41. He contends that the trial court committed reversible error regarding the selection of venireperson 41 and acknowledges in his reply brief that his challenge to venireperson 33 is not included in his posttrial motion. In its response, the State argues that defendant untimely attempted to excuse venirepersons 33 and 41, and that plain error is inapplicable because the court did not commit a clear or obvious error when it seated those jurors.

¶ 49    To preserve an issue for review, a defendant must raise an objection both at trial and in his posttrial motion. *People v. Thompson*, 238 Ill. 2d 598, 611-12 (2010). Our supreme court has explained that "waiver" is "the voluntary relinquishment of a known right," whereas "forfeiture applies to issues that could have been raised but were not." *People v. Phipps*, 238 Ill. 2d 54, 62

(2010). In short, forfeiture " ' "is the failure to make the timely assertion of the right." ' " *Id.* (quoting *People v. Blair*, 215 Ill. 2d 427, 444 n. 2 (2005), quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).

¶ 50    Our supreme court has held that "[t]he failure to challenge a juror for cause or by peremptory challenge waives any objection to that juror." *People v. Collins*, 106 Ill. 2d 237, 271 (1985); see *People v. White*, 353 Ill. App. 3d 905, 913 (2004); *People v. Brooks*, 185 Ill. App. 3d 935, 939 (1989). Further, "once a juror has been accepted and sworn, neither party has the right to challenge." *Brooks*, 185 Ill. App. 3d at 939. The court in *Brooks* also stated:

"Once a prospective juror is accepted, the accepting party no longer has the *right* to peremptorily challenge that juror. However, if the accepted juror has not yet been sworn, the trial court may in its discretion allow the party a peremptory challenge where the court is shown that new information has been revealed which, if it had been known prior to acceptance, would have prompted the party to exercise a peremptory challenge." (Emphasis in original.) *Id.* (citing *People v. Scheidt*, 113 Ill. App. 3d 632, 637 (1983)).

¶ 51    With these principles of forfeiture in mind, we now address whether defendant forfeited his challenges to the seating of venirepersons 33 and 41 on the jury.

¶ 52                                1. Venireperson 33

¶ 53    During jury selection, the trial court told defendant that he could first question venireperson 33, who was not initially part of the first panel but was called to replace venireperson 25. He declined to question her, after which the State elicited that her ex-husband had committed domestic violence against her and that she had witnessed her sister sustain injuries due to domestic violence. When the State asked venireperson 33 whether anything about that experience would cause her

not to be fair and impartial, she responded, "I don't think so." The State finished questioning her and stated, "[w]e would accept her."

¶ 54 Defendant never expressly stated that he had accepted the panel and was not asked. He had merely told the trial court that he had no questions for venireperson 33. The court never informed defendant that his decision to decline questioning a venireperson resulted in the acceptance of that prospective juror to the panel. Immediately after the State expressed to the court that it had accepted venireperson 33, the court stated, "the potential jurors in the first panel have now been accepted as jurors, so the four of you will be jurors in this case." The court provided defendant with no opportunity to challenge venireperson 33 because it then recessed for lunch. After returning from lunch, while the second panel was being questioned, defendant told the court, "[b]efore the break, it was sort of abrupt, I didn't get a chance to thank and excuse the lady in the red jacket in the first row." The court stated that defendant could only question the venirepersons in the second panel, not allowing him to challenge venireperson 33.

¶ 55 Defendant's posttrial motion did not challenge the inclusion of venireperson 33 on the jury, but he argues that the trial court ignored his challenge against venireperson 33. The record shows that defendant challenged "the lady in the red jacket," however, the record does not include any identification establishing whether venireperson 33 was "the lady in the red jacket in the first row," as he claims. Defendant has not provided this court with any additional record evidence to clarify whether he, in fact, challenged the inclusion of venireperson 33 during jury selection. Accordingly, we have insufficient information for this court to grant relief as to the inclusion of venireperson 33 on the jury.

¶ 56 Nevertheless, our supreme court has held that, "[w]hile a prospective juror may be removed for cause when that person's 'views would prevent or substantially impair the performance of his

duties as a juror' [citation], an equivocal response does not require that a juror be excused for cause." *People v. Buss*, 187 Ill. 2d 144, 187 (1999) (quoting *People v. Armstrong*, 183 Ill. 2d 130, 143 (1998), and citing *People v. Williams*, 173 Ill. 2d 48, 67 (1996)). Venireperson 33 described her personal experience with domestic violence, but when the State asked her whether anything about that experience would cause her not to be fair and impartial, she responded, "I don't think so." Venireperson 33 did not respond in an equivocal manner as to her ability to be a fair and impartial juror, despite her personal history with domestic violence. "An equivocal response by a prospective juror does not necessitate striking the prospective juror for cause where the prospective juror later states that he will try to disregard his bias." *People v. Hobley*, 159 Ill. 2d 272, 297 (1994). Accordingly, viewing venireperson 33's *voir dire* responses as a whole, we find the trial court's decision to seat venireperson 33 on the jury was not against the manifest weight of the evidence.

¶ 57                                    2. Venireperson 41

¶ 58    The trial court called venireperson 41 onto the second panel of prospective jurors after defendant had exercised a peremptory challenge against venireperson 2. At that point, defendant had exercised only two of his seven allotted peremptory challenges. The court told defendant "you may question this juror," but he declined. The court then stated, "[y]ou do not have any questions for her. All right." The court stated that it was going to accept the panel when the State interrupted and sought to question venireperson 41. The State elicited from venireperson 41 that her father had committed domestic violence against her mother and that she had witnessed an act of domestic violence against a friend. When the State asked her whether her experience with domestic violence would cause her to be biased at trial, she responded, "[i]t might. I can't really say it won't." The State did not ask any further questions, accepted the panel, and tendered the panel back to the

court. Defendant then tried to exercise a peremptory challenge, but the court stated, "[n]o, you've accepted the panel." Defendant responded that he did not accept the panel. The court next stated that "the individuals in the second panel have now been selected as jurors" and called in the third panel of venirepersons.

¶ 59    Here, defendant clearly attempted to exercise a peremptory challenge immediately after the State accepted and tendered the panel back to the trial court, which ignored defendant's challenge. Defendant never expressly accepted the second panel of prospective jurors. The court never asked defendant if he accepted the panel and never informed him that his decision to decline the questioning of venireperson 41 amounted to his acceptance of her to the panel. Even if we accepted the court's precipitous procedure of accepting the panels in this case, the court did not foreclose the ability to back-strike after acceptance. Nonetheless, defendant attempted to challenge peremptorily venireperson 41 and also raised this challenge in his posttrial motion. Therefore, he did not forfeit his right to challenge the seating of venireperson 41 on the jury.

¶ 60    However, even if we were to assume that defendant forfeited his right to challenge the seating of venireperson 41 on the jury, this court may address an issue that has been forfeited if the error is so serious that it denied defendant a fair and impartial trial. Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). The plain error rule allows consideration of unpreserved errors "affecting substantial rights," to protect the integrity of the judicial process. *People v. Wembley*, 342 Ill. App. 3d 129, 138 (2003); see *People v. Herron*, 215 Ill. 2d 167, 179 (2005). Plain error under these circumstances is established if the defendant can show the selected jury was biased. *People v. Morales*, 2012 IL App (1st) 101911, ¶ 59. "Absent evidence that the instant defendant did not receive a fair trial before a fair and unbiased jury, there is no basis to find plain error." *Id*. ¶ 60. Although not required under the circumstances here, we may nevertheless consider defendant's

contention under the plain error exception to forfeiture because the issue affects the constitutional right to a fair trial. *People v. Bowman*, 325 Ill. App. 3d 411, 424 (2001); see also *People v. Gardner*, 348 Ill. App. 3d 479, 489 (2004) ("Defense counsel's failure to object to the trial court's manner of conducting the jury selection process does not prevent us from considering the issue under the plain error exception to the waiver rule."). Furthermore, " ' "forfeiture is a limitation on the parties and not the reviewing court, and we may overlook forfeiture where necessary to obtain a just result or maintain a sound body of precedent." ' " *People v. Acosta*, 2024 IL App (2d) 230475, ¶ 15 (quoting *People v. Wetzel-Connor*, 2023 IL App (2d) 230348-U, ¶ 26, quoting *People v. Holmes*, 2016 IL App (1st) 132357, ¶ 65). Accordingly, we now consider whether the aforementioned jury selection and empanelling process denied defendant a fair trial.

¶ 61                        C. Fair Trial Before an Impartial Jury

¶ 62    Defendant argues that the trial court abused its discretion when it ruled that his decision to decline questioning of venirepersons precluded him from later challenging those prospective jurors after they had revealed their biases. Defendant contends that even an experienced attorney could not have been expected to know the court's idiosyncratic method of jury selection well enough to anticipate that "I have no questions' would be interpreted by the court as "I accept the panel." The court never instructed defendant that every time he declined to ask questions of a prospective juror, he would be deemed to have accepted that juror and panel to be seated on the jury.

¶ 63    The State responds that the trial court "informed defendant he had the right to question the jurors before accepting them," without providing this court with a citation to the report of proceedings to support this statement. Indeed, a thorough review of the record simply does not confirm the State's contention. While the State correctly notes that the court had no obligation to coach the *pro se* defendant regarding jury selection procedure, the court nevertheless has the

obligation to conduct jury selection consistent with Rule 434 and in a manner that prevents the seating of a biased jury. The State argues that the court allowed defendant to question venireperson 41 and he chose not to do so; therefore, he was afforded a fair opportunity to detect bias or hostility from venireperson 41. Further, the State contends that venireperson 41 was not actually biased and, thus, defendant was not deprived of a fair trial before an impartial jury.

¶ 64    Here, the cascade of events that led to the seating of venireperson 41 began with the trial court's failure to provide the parties with notice of its procedure for empaneling a jury. Rule 434(a) provides the court with the procedure to empanel juries in criminal cases, in which "the parties shall pass upon and accept the jury in panels of four, commencing with the State, unless the court, in its discretion, directs otherwise." Ill. S. Ct. R. 434(a) (eff. Feb. 6, 2013).

¶ 65    In *Moss*, our supreme court determined whether Rule 434(a) granted the trial court discretion "to prohibit parties from peremptorily challenging those prospective jurors the party has passed upon and tendered." 108 Ill. 2d at 272. In that case, before jury selection, the trial court "advised opposing counsel that once a side passed upon a panel of four prospective jurors and tendered the panel to the other side, the side tendering the panel would not be allowed to challenge a venireman previously tendered." *Id*. at 273. "After the opponent excused a member of the tendered panel, accepted another juror, then retendered the panel, the first side could, however, challenge the venireman who was substituted." *Id*. The court overruled the defendant's objection to this procedure. *Id*. On appeal, the defendant argued that Rule 434(a) does not provide the court with discretion to prohibit peremptory challenges of jurors previously passed upon and tendered by the challenging party. *Id*. at 274. The defendant also contended that his peremptory rights were impaired by the court's procedure. *Id*.

¶ 66    The supreme court explained that the provision in Rule 434(a), "unless the court in its discretion, directs otherwise," allows the trial court "to modify the traditional procedure of impaneling juries, and to dispense with the traditional power of back-striking." *Id*. at 275. However, this discretion to alter the usual procedure for exercising peremptory challenges is limited to whether "both parties have adequate notice of the system to be used and the method chosen does not unduly restrict the use of challenges." *Id*.

¶ 67    The *Moss* court held that the trial court did not abuse its discretion when it prohibited back-striking because it "neither denied nor impaired defendant's peremptory right," and instead "defined when the right was to be exercised." *Id*. at 276. Relevant here, the supreme court further stated that "[a] procedural limitation upon peremptory challenges does not deny or impair the peremptory right if the procedure affords both parties fair opportunity to detect bias or hostility on the part of prospective jurors, and if the procedure allows both parties a fair chance to peremptorily excuse any venireman." *Id*. Importantly, the trial court, "prior to initiating *voir dire*, expressly notified both parties of its prohibition against back-striking, and the court questioned in detail each of the prospective jurors." *Id*. The defendant had tendered the panel, including the subject venireperson, after having had full opportunity to excuse her by peremptory challenge. *Id*. The record did not indicate bias or prejudice on the part of that venireperson or any of the other jurors. *Id*. The trial court, "by limiting the time at which peremptory challenges could be made, did not impair defendant's peremptory right." *Id*. at 277.

¶ 68    More recently, the First District in *Walls* found that the trial court's use of an alternative jury empaneling process did not impair the defendant's right to peremptory challenges and that any error in the court's refusal to remove two potential jurors, who were victims of similar crimes, was not grounds for reversal. 2022 IL App (1st) 200167, ¶¶ 41-43. There, the defendant was

convicted of vehicular invasion. *Id*. ¶ 1. On appeal, he argued that the trial court failed to provide timely notice of its jury selection procedure, which precluded him from adequately questioning potential jurors. *Id*. ¶ 31. He also contended that because he was required to exercise his challenges contemporaneously with the State, the number of those challenges were, in effect, reduced. *Id*. The trial court's jury selection procedure involved calling 30 potential jurors at the same time into the venire and questioning each regarding their background and potential biases. *Id*. ¶ 32. Two of the prospective jurors stated that they had been victims of similar crimes with which the defendant was charged. *Id*. Both venirepersons, "C.S." and "V.P.", stated that they could nonetheless be fair and impartial jurors. *Id*.

¶ 69    In contrast to the jury selection procedure in *Moss*, the trial court in *Walls* instructed how the jury would be empaneled *after* allowing the defense and the State the opportunity to question the jury. *Id*. ¶ 33. Under this procedure:

> "First, the State and defense would identify in writing, and by number and name, the jurors whom they sought to dismiss for cause and, second, those they wished to strike peremptorily. The court stated that both the State and defense would submit their lists at the same time. They would discuss cause first, but there was no 'back striking.' Thus, if they struck the same potential juror, the strike would count against both parties. The court overruled defendant's objection to this process several times." *Id*. ¶ 33.

¶ 70    The defense attempted to strike C.S. and V.P. for cause, but the trial court denied this request because they previously had stated during questioning that they could be fair and impartial. *Id*. ¶ 34. The trial court also denied the defense's request to question them further because it had the opportunity earlier and had chosen not to do so. *Id*. Nevertheless, the trial court stated that the

defense could use a peremptory strike against those individuals. *Id*. The defense exercised peremptory challenges against C.S. and V.P. *Id*. ¶ 35. The defendant argued that the trial court abused its discretion "by providing notice of this alternate process only *after* the venire was questioned." *Id*. ¶ 39. He claimed that the lack of notice "caused him to miss an opportunity to further question [C.S.] after unsuccessfully moving to strike him for cause and to lose a peremptory strike since both parties struck the same juror." *Id*.

¶ 71   The *Walls* court first noted that *Moss* did not hold that notification of an alternate empaneling procedure is *required* before initiating *voir dire*. *Id*. ¶ 40. Rather, the trial court's alternate method of informing the parties about the empaneling procedure after questioning the venire did not limit the parties' ability to detect juror bias or hostility, "which is the key factor according to *Moss*." *Id*. Defense counsel in *Walls* "had ample opportunity to question [C.S.] during *voir dire* about his crime-victim status but chose not to do so." *Id*. ¶ 41. The reviewing court stated that the defendant did not identify how knowledge of the trial court's alternate empaneling procedure would have changed the defendant's practices. *Id*. The defendant "also does not argue on appeal that the trial court abused its discretion in conducting the *voir dire* or in refusing to dismiss [C.S.] for cause" because C.S. stated that he could be fair and impartial. *Id*. Further, even assuming error, "the failure to remove a juror for cause is grounds for reversal only if the defense has exercised all of its peremptory challenges and the objectionable juror was allowed to sit on the jury." *Id*. ¶ 42 (citing *People v. Pendleton*, 279 Ill. App. 3d 669, 675 (1996)). The defendant never argued that he was forced to accept an objectionable juror after exhausting all his peremptory challenges. *Id*. The *Walls* court concluded that the defendant failed to demonstrate that he was deprived of an impartial jury. *Id*.

¶ 72 The instant case is distinguishable from both *Moss* and *Walls* in that the trial court here provided absolutely no instruction whatsoever regarding the jury empaneling process, other than to inform defendant that he had seven peremptory challenges. Unlike *Walls*, the timing issue of when to provide instruction of the jury empaneling process does not arise here because the timing of those instructions is not at issue. Imperative in this case is the trial court's failure to provide the parties with any guidelines as to how *voir dire* would be conducted. The trial court did not inform the parties about the empaneling procedure at all, much less sufficiently enough to avoid "limit[ing] their ability to detect juror bias or hostility." *Id*. ¶ 40. Fatally, the trial court also never informed the parties what constituted their acceptance of either a venireperson or a panel. The record shows that the court did not deny defendant the opportunity to question the panel and particularly venireperson 41. However, if the trial court had provided any guidance regarding *voir dire* procedure, defendant might have been able to surmise that his decision to decline questioning of a particular venireperson would be tantamount to his acceptance of that venireperson to the panel. Although we recognize that *Moss* did not hold that notification of an alternate procedure is *required* before initiating *voir dire*, the supreme court stated that the parties must have "adequate notice of the system to be used," and that the method chosen should not "unduly restrict the use of challenges." *Moss*, 108 Ill. 2d at 275.[2] Here, because the trial court failed to provide any instruction as to the method and manner of how jury selection would be conducted before proceeding, the record clearly shows that defendant was unaware of what constituted his acceptance of a panel.

---

[2]The record contains no standing orders or any other forms of notice of the trial court's *voir dire* procedures.

¶ 73 In this case, the trial court's failure to provide notice of the jury empaneling procedure both impaired and denied this defendant a fair chance to exercise his peremptory right to excuse venireperson 41, who had clearly expressed that her personal experience with domestic violence would cause her to be biased at trial. *Id*. at 276. When asked whether her experience would cause her to be biased, she responded, "[i]t might. I can't really say it won't." Contrary to the State's argument, her response was not equivocal. Venireperson 41 clearly indicated that she was not prepared to exercise her personal judgment, favoring neither prosecution nor accused, standing indifferent to both, and guided only by law and the evidence in the performance of her duties as a juror. *Hobbs*, 35 Ill. 2d at 270.

¶ 74 Although the trial court allowed defendant to ask venireperson 41 questions and he declined, he was clearly unaware of the court's presumption that to decline questioning of a venireperson meant that he had accepted that venireperson to sit on the jury. The record shows that even the State was confused by the procedure because it needed to interrupt the circuit court in order to request its turn to ask venireperson 41 questions after the court had stated that it was going to accept the panel. Venireperson 41's bias was revealed only during the State's questioning, after which the court immediately accepted the second panel of jurors despite defendant's attempted peremptory challenge. Neither the State nor the court attempted to ask any follow up questions to inquire whether venireperson 41 could be a fair and impartial juror in this case. Further, the trial court failed to explain challenges for cause prior to *voir dire*, which is significant when considering that venireperson 41 stated that she could not be a fair and impartial juror. See *Harris*, 196 Ill. App. 3d at 676-77.

¶ 75 Here, the manifest weight of the evidence shows that, because the trial court failed to provide notice of any procedure, jury selection was conducted in such a manner that it created the

risk that a party could "accept" a venireperson according to the court's unexplained procedure of acceptance, only to have a venireperson reveal bias when answering questions from the other party. That risk came to fruition in this case. Defendant did not knowingly accept venireperson 41, whose background revealed witnessing close family members experience the same crimes alleged against this defendant. Venireperson 41 admitted her bias before the trial court, yet the court sought to move forward with jury selection instead of considering defendant's peremptory challenge.

¶ 76 Moreover, the State's reliance on *Villa* is misplaced. There, the defendant was convicted of aggravated battery, armed robbery, and attempted murder. *Villa*, 93 Ill. App. 3d at 196, 197. On appeal, he argued that the trial court erred when it refused to allow him to exercise a peremptory challenge against a prospective juror. *Id*. at 200. He contended that after the defense accepted the first panel and tendered it to the State, which also accepted the panel, he attempted to have venireman "J.S." removed for cause, after he responded, "I guess I have to," to the question of whether he could sign a not guilty verdict. *Id*. The court had denied the defendant's challenge for cause and his peremptory challenge. *Id*.

¶ 77 The *Villa* court found no evidence of bias in J.S.'s answer, considering that he was subject to extensive *voir dire* by both parties. *Id*. at 201. The reviewing court concluded that the trial court did not err when it refused to allow the defendant to exercise a peremptory challenge after both sides had accepted the panel. *Id*.

¶ 78 Here, even if both parties had accepted the panel, *Villa* is distinguishable because unlike J.S., venireperson 41 had clearly expressed bias in her response to the question of whether she could be fair and impartial. Further, contrary to the State's argument, if a "party seeking to challenge a juror after accepting him had shown the court that information had reached him for the first time which, if he had known, would have caused him to peremptorily challenge the juror, it

would have been within the court's power to allow the party the peremptory challenge." *Scheidt*, 113 Ill. App. 3d at 632. It is within the trial court's discretion to allow a peremptory challenge of a juror that a party had previously accepted but who had not been sworn. *Id*. Even after venireperson 41 had expressed clear bias, the trial court had the discretion to allow defendant a peremptory challenge to excuse her. *Id*. Indeed, once the trial court becomes aware of potential bias, the court should ask the prospective juror whether the existence of that opinion would prevent the juror from judging the facts fairly and impartially at trial. If the prospective juror answers that it might prevent him or her from reaching a fair and impartial verdict, then the trial court should excuse the juror. *Harris*, 196 Ill. App. 3d at 677. The failure of the trial court to do so here resulted in the seating of a biased juror and thus deprived defendant of the right to a fair trial before an impartial jury.

¶ 79    In sum, the trial court abused its discretion because it failed to inform the parties of its method of conducting jury selection early enough to avoid limiting defendant's ability to detect juror bias and hostility. *Moss*, 108 Ill. 2d at 275-76; *Walls*, 2022 IL App (1st) 200167, ¶ 40, 42. Furthermore, the lack of any notice of the court's nontraditional method impeded defendant's ability to exercise peremptory challenges against venirepersons who had expressed potential bias. *Moss*, 108 Ill. 2d at 275-76; *Walls*, 2022 IL App (1st) 200167, ¶ 40, 42. Indeed, once venireperson 41's bias or hostility was detected through the State's questioning, the court's *voir dire* procedure did not allow defendant a fair chance to peremptorily excuse her. *Daniels*, 172 Ill. 2d at 165; *Moss*, 108 Ill. 2d at 276. Ultimately, this conduct thwarted the purpose of *voir dire*, namely, "the selection of a jury free from bias or prejudice." *Rinehart*, 2012 IL 111719, ¶ 16.

¶ 80    In *Johnson*, the defendant was found guilty of first degree murder and the reviewing court considered whether the trial court abused its discretion when it denied the defendant's challenges of certain venirepersons for cause. The *Johnson* court found that the trial court violated the

defendant's right to a fair and impartial jury. 215 Ill. App. 3d at 724. The court stated as to the inclusion of the subject venirepersons on the jury:

> "Mr. Milkovich, Mr. Welch, and Mr. Swope were crime victims or they had close friends or relatives who were victims of violent crimes. In addition, they equivocated when first asked whether they could be fair and impartial. For these reasons, they should have been dismissed for cause. *** The three aforementioned jurors expressed self-doubt with respect to their ability to be impartial. Therefore, we find that the trial judge's determination with respect to Messrs. Milkovich, Welch, and Swope was against the manifest weight of the evidence." *Id*. at 725.

The *Johnson* court concluded that the defendant was denied his right to an impartial jury and reversed and remanded the cause for a new trial. *Id*. at 726.

¶ 81    "The denial or impairment of the peremptory right is reversible error without a showing of prejudice to the defendant." *Moss*, 108 Ill. 2d at 276. Here, because the requisite showing of impairment to peremptory challenge has been established, we presume prejudice to defendant's right to a fair trial. *Daniels*, 172 Ill. 2d at 165. Our supreme court has held that even if evidence of a defendant's guilt was sufficient, issues involving the right to a fair trial by a panel of impartial jurors cannot be disposed of by the harmless error rule. *Cole*, 54 Ill. 2d at 411; see *People v. Adkins*, 239 Ill. 2d 1, 20 (2010). In this case, defendant was denied his right to an impartial jury, resulting in the denial of a fair trial. Therefore, we reverse the verdict and remand this cause for a new trial. *Moss*, 108 Ill. 2d at 275-76; *Johnson*, 215 Ill. App. 3d at 726.

¶ 82                                  III. CONCLUSION

¶ 83    Based on the foregoing, we reverse the jury verdict and judgment of the circuit court of De Kalb County and remand this cause for a new trial.

¶ 84    Reversed and remanded.

*People v. Prince*, **2024 IL App (2d) 230027**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of De Kalb County, No. 19-CF-0094; the Hon. Marcy Buick, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Fletcher P. Hamill, of State Appellate Defender's Office, of Elgin, for appellant. |
| **Attorneys for Appellee:** | Richard D. Amato, State's Attorney, of Sycamore (Patrick Delfino, Edward R. Psenicka, and Diane L. Campbell, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |